### FERGUSON *vs.* BROOME.

*In the matter of the application to mortgage, lease, or sell the Real Estate of* JOHN L. BROOME, *deceased.*

THE heirs and devisees of a deceased debtor are liable for all his debts to the extent of the lands descended or devised, provided the personal estate be insufficient or has been previously exhausted.

The land itself may also be reached, and through the intervention of the executor or administrator, be mortgaged, leased, or sold by the order of the Surrogate, for the payment of the debts, in case the personal estate be not sufficient to discharge them.

*Voluntary* proceedings for this purpose by executors and administrators, are limited to the period of *three years* after the granting of letters testamentary, or of administration.

The creditor may *at any time* institute *compulsory* proceedings for the same purpose, and require the executor or administrator to show cause why he should not be ordered to sell the real estate, and the statute expressly prohibits him from assigning as cause, "that the time within which he is allowed to sell the same has expired."

But though the lapse of three years after the granting of letters is not a flat bar to a compulsory proceeding, yet it is *discretionary* with the Surrogate

FERGUSON *vs.* BROOME.

after a long delay in making the application, whether to order the sale or not. The proceeding must be instituted within a reasonable period, and a neglect to apply, for many years, without explanation, is good reason for rejecting the application.

The heirs or devisees may make the same defence to the claims sought to be established before the Surrogate, as they could before another tribunal.

At common law, and in Equity, a judgment against the executor or administrator never was any evidence against the heir. There is no privity between the personal representatives and the heirs.

By the Revised Statutes *it seems* that a judgment recovered against the executor or administrator after *a trial on the merits*, was made *prima facie* evidence of a valid and subsisting debt as against the heir.

By the 72d section of the Act of 1837, "concerning the proof of wills," &c., it was provided that where a judgment has been recovered against an executor or administrator for a debt due by the deceased, and the personal estate is insufficient for its payment, the debt for which the judgment was obtained shall, notwithstanding the form of the judgment, remain a debt against the estate of the deceased, to the same extent as before, and to be established in the same manner as if no such judgment had been recovered.

A judgment recovered against an executor in 1841, while the law was in this condition, cannot be received in evidence against the heir.

The 72d Section of the Act "concerning the proof of wills," was amended in 1843, to the effect that where a judgment or decree has been obtained against the executor or administrator "after a trial or hearing upon the merits," it shall be "*prima facie*" evidence of the debt on an application to mortgage, lease, or sell the real estate. But this amendment is not to be applied retrospectively to a judgment or decree recovered before the passage of the amended act in 1843.

Even under the 72d Section as now amended, the judgment is only *prima facie* evidence of the debt, and does not change its nature or character, nor convert it from a simple contract debt into a speciality, nor make the lands descended to the heir liable for the costs.

The heir may set up the statute of limitations against a debt sought to be established against the lands, and if the debt upon which the judgment against the executor or administrator was obtained, is barred by the statute, the recovery of the judgment does not prevent the statute from running, nor attach to the debt the limitation of twenty years, in which time a judgment is presumed to be paid, instead of the limitation of six years applicable to a simple contract debt.

AUGUSTUS SCHELL, *for the Executor.*

H. M. WESTERN, *for the Widow and Heirs.*

THE SURROGATE. The will of John L. Broome was admitted to Probate, January 16, 1836, and letters testa-

mentary were issued to William Van Hook, the executor, February the 15th, 1836. On the 28th March, 1848, John T. Ferguson, administrator of John Ferguson, deceased, presented his petition to the Surrogate, claiming to be a creditor of John L. Broome, deceased, and praying for an order on Van Hook, the executor, to show cause why he should not be required to mortgage, lease, or sell the real estate of his testator for the payment of his debts. Such proceedings were had on this petition, that on April 17, 1848, the executor was ordered to make application to sell the real estate pursuant to the prayer of the petition. The executor presented his petition in obedience to such direction, on the 12th September, 1848, and obtained an order thereon, requiring the widow and heirs to show cause why authority should not be granted him to mortgage, lease, or sell the real estate of the deceased for the payment of his debts. On the return of that order, the widow, and children, heirs of the deceased, appeared before me to show cause against granting the application. On such hearing the only debt claimed was that of John T. Ferguson, the original petitioner. To establish this debt, the counsel produced the record of a judgment recovered in the New-York Common Pleas, December 30, 1841, against William Van Hook, executor of John L. Broome, deceased, by John T. Ferguson, administrator of John Ferguson, deceased, for the sum of $446 88. From an inspection of the record, which is the only evidence offered, there appears to have been a trial upon the merits in that case.

By the original rule of the civil law, the heir was chargeable with the debts of the deceased, not only to the extent of the assets, but to the extent of all the other property of the heir, provided he accepted the inheritance. By a provision of Justinian, however, he might protect himself from responsibility beyond the assets descended, by making an inventory. By the Common Law, the heir was liable for the debts of the ancestor to the value only

of the property descended, and he held the land subject to the payment of the debts. The debts, however, must be of a certain quality, viz., those due on bonds, covenants, or other specialties, where the party bound himself, and his heirs by expressly naming them. (*Kent's Com.*, 4. 379. 420 ; *Williams on Executors*, 1436.) The same remedy in favor of creditors did not exist against the devisees of the debtor, and to obviate this mischief, the statute of 3 *Wm. and M.*, c. 14, was passed, and more recently the statutes 11 *George IV. and* 1 *Wm. IV.*, c. 47, 3 *and* 4 *Wm. IV.*, c. 104, which latter act reaches the case of simple contract debts.

The rule of the Common Law was modified at an early period in this State, and by a provision in the act of April 4, 1786, *Greenleaf*, 1, *p.* 237, which has been continued in the subsequent revisions, heirs and devisees are made liable for all the debts of the ancestor to the extent of the assets descended, provided the personal estate of the deceased be insufficient, or has been previously exhausted. The statutes now contain ample directions how this liability is to be enforced, and the claims of creditors of the ancestor against lands descended to the heirs or devisees, can only be pursued in strict conformity to the provisions of the statute. (*Pierce* vs. *Alsop, Legal Observer, February*, 1846, *p.* 52.)

A more convenient mode of reaching the real estate was provided by the act of 1786, through the intervention of the personal representatives ; the executor or administrator being authorized, on discovering or suspecting that the personal assets would be insufficient for the payment of the debts, as soon as conveniently might be, to present a true and just account to the Judge of Probate, and request his aid in the premises. It thereupon became the duty of the Judge to cite the parties in interest before him, to show cause why the real estate should not be sold, and the proper proceedings then followed to the termination of the matter. It will be perceived that this applica-

tion on the part of the executor or administrator, was in substance a voluntary one ; that is, no means were directly provided by which creditors could compel the executor or administrator to institute such proceedings. This statute was subsequently modified in some of its features (1 *Revised Laws*, 1813, *p.* 450), but substantially, the law stood in this position until the revision of the statutes, when, by *Section* 48, Title 4, *Part* 2. *c.* 6. of the *R. S.*, creditors were for the first time enabled to cite the executor or administrator before the Surrogate, to show cause why their claims should not be paid by a mortgage, lease, or sale of the real estate. The revisers in the note to this section, say, that instead of compelling creditors to bring suits against heirs and devisees, which are very expensive and tedious, they proposed by this new enactment, to allow them to compel the executor or administrator to proceed under this title. (3 *R. S.*, 2d ed. *p.* 648.) As the statute previously stood, no certain period was designated within which the executor or administrator was bound to make application ; but now the law was altered, in this respect, and the right to apply to the Surrogate was limited to three years after the granting of letters testamentary or of administration ; and in harmony with this new feature, creditors were restrained from bringing suits against the heirs or devisees within the three years. (2 *R. S.*, 3d ed. *p.* 163 *et seq.* § 1. 57.) This power in the hands of the personal representatives, is in the nature of a trust to be exercised in behalf of creditors only, and is a substitute for the remedy of creditors against heirs and devisees, who for the period of three years are not liable to be sued for the debts of the ancestor. (*Brevoort* vs. *McJimsey*, 1 *Ed. Ch. R.*, 553 ; 2 *R. S.*, 3d ed. *p.* 548.)

Having thus briefly reviewed the nature and the history of the relative rights of creditors, and those who represent the personal and real estate of the deceased, and the mode of enforcing those rights, it remains to consider whether there is sufficient ground in the present case to

direct the mortgage, lease, or sale of the real estate of which John L. Broome died seized. The only proof offered of any debt due by the deceased, consists in the record of the judgment against his executor, recovered by Ferguson in the Court of Common Pleas. It has not been the intention of the Legislature, in securing to the creditor a substitute for the more " expensive and tedious" process of a suit, to deprive the heirs of any legal defence to the claim, which they might set up before another Court. This has been expressly guarded against by the 13th section of the Statute (original section 10, 2 *R. S.*, 3*d ed. p.* 165). But independently of the statute, it has always been held, that in this proceeding the heirs might make the same defence here as they could before another tribunal. Now both at law and in equity, a judgment against the executor or administrator never was evidence against the heir. There is no privity between the executor or administrator and the heir. The acknowledgment of one does not bind the other. (*Mooers* vs. *White*, 6 *Johnson's Ch. R.*, 360 ; *Mason's Devisees* vs. *Peter's Administrators*, 1 *Munf. R.*, 437 ; *Fitch* vs. *Witbeck*, 2 *Barbour's C. R.*, 161 ; *Baker* vs. *Kingsland*, 10 *Paige, C. R.*, 368 ; *Osgood* vs. *Manhattan Co.*, 3 *Cowen's R.*, 612 ; *Spraker* vs. *Davis*, 8 *Cowen's, R.*, 132 ; *Scott* vs. *Hancock*, 13 *Mass. R.*, 162. *ex parte Allen*, 15, *id.*, 58.) It remains to be seen how far the statute has modified the rule of the common law. By *Section* 16. 2 *R. S.*, 3*d ed. p.* 165 (original section 13), it is directed that the demands which the Surrogate shall upon the hearing adjudge valid and subsisting against the estate of the deceased; or which shall have been determined to be valid on the trial of an issue by a jury, when ordered pursuant to the 14th section ; *or which shall have been recovered against the executors or administrators, by the judgment of a Court of Law upon a trial on the merits*, shall be entered by the Surrogate in a book of his proceedings, and the vouchers supporting the same be filed in his office. Although this provision contains a mere direction to the

Surrogate as to preserving a record of a certain portion of the proceedings in his books (*see Reviser's Notes\**), yet the phraseology of the section implies that a judgment recovered against the executor or administrator upon a trial on the merits, is to be treated as evidence of a valid and subsisting debt; and I suppose that in connection with the 13th section (original section 10), which declares the right of the heir or devisee to contest the validity and legality of any debts which may be represented as existing, it operated to the extent at least of making the judgment *prima facie* evidence of the debt. The Chancellor has held that the section does not apply to decrees of the Court of Chancery, for the reason that decrees are not in terms referred to in the section. (*Wood* vs. *Byington*, 2 *Barbour's Ch. R.*, 391.)

In the year 1837, however, the rights of creditors to compel a sale of the real estate underwent an important modification. The original 48th section, the only provision giving them any compulsory power over the executor or administrator was repealed, and a substitute for it given in the 72d section of the act "concerning the proof of wills," &c. (*Laws*, 1837, *p.* 536.) The effect of a judgment recovered against the personal representatives became the subject of express legislation, and whatever doubt may have existed as to the construction of the 13th and 16th sections of the Revised Statutes on this point, was entirely resolved. The 72d section of the act of 1837 in terms declares that, " where a judgment has been recovered against an executor or administrator for any debt due from the deceased, and there are not sufficient assets in the hands of such executor or administrator to satisfy the same, the debt for which the judgment was obtained shall, notwithstanding the form of such judgment, remain a debt against the estate of the deceased to the same extent as

---

\* The Revisers say, " The principle is partly in the act of 1822, p. 283. § 2." On referring to this act, it will be found to contain only a general direction as to the entry of the proceedings.

before, and to be established in the same manner as if no such judgment had been recovered." This was the law in 1841, when the judgment of Ferguson, now produced before me to establish his debt, was recovered, and it is entirely decisive of this case. It is an explicit statutory declaration of the law as it stood before the Revised Statutes, and is substantially a provision that, although a judgment has been recovered against the executor or administrator, the debt for which it was recovered shall, as against the real estate, remain a debt to be established in the same manner as if no such judgment had been recovered. The recovery of the judgment by Ferguson, therefore, was a mere nullity as against the heirs. The production of the record proved nothing; and no debt has been established before me, for the payment of which I ought to direct the real estate to be mortgaged, leased, or sold.

The counsel for the executor claimed, however, that under the amendment of the 72d section of the act of 1837, by chapter 172 of the Laws of 1843, the record produced was *prima facie* evidence of the debt sought to be established. The amendment of 1843 was a re-enactment of the 72d section of the act of 1837, with the additional *proviso*, " that where such judgment or decree has been obtained upon a trial or hearing upon the merits, the same shall be *prima facie* evidence of such debt before the Surrogate." (2 *R. S.*, 3d ed. *p*. 170. § 52.) The difficulty is, that the act of 1843 was passed after the judgment was recovered by Ferguson against Broome's executor, and could not, as against strangers, give the judgment any greater force than it possessed by law at the time it was recovered. ( *Wood* vs. *Byington*, 2 *Barbour's Ch. R.*, 387.) And we have already seen, that when the judgment was recovered, it was no evidence at all of a debt as against the heirs.

But even where a judgment has been obtained against an executor or administrator, subsequent to the act of 1843, and there was a trial or hearing on the merits, the

judgment, on an application to sell the real estate, is only *prima facie* evidence of *the debt.* It does not change the nature or character of the debt. The whole section 72 of the act of 1837, as amended by the act of 1843, so far as it relates to judgments, provides three things, either of which is quite as important to be observed as the other, viz.: 1. That the debt for which the judgment was entered shall remain a debt against the estate of the deceased to the same extent as before; 2. That the debt is to be established in the same manner as if no such judgment had been recovered; 3. Provided, however, that where there has been a trial or hearing on the merits, the judgment shall be *prima facie* evidence of the debt. Now where there has been a trial on the merits, the second of the above enumerated requisites is dispensed with, but the first remains in full force. The debt is established *prima facie* by the production of the record showing a trial on the merits, but then it is the *debt* which is established, and not the judgment. The heirs are not liable for the costs of the judgment. (*Wood* vs. *Byington, supra.*) The judgment is not the thing claimed; it does not constitute the debt against the estate of the deceased; it is only *evidence* of the debt, the means provided by statute in a special case of *proving* the debt. Such I think would be the fair construction of the amendment of 1843, apart from the clause of the 72d section of the act of 1837, which declares that notwithstanding the judgment, the debt for which it was obtained *shall remain a debt* against the estate of the deceased, *to the same extent as before;* but in view of the very explicit language of this latter clause, I cannot see how any doubt can be entertained on the subject.

Supposing, then, that, as urged by the counsel for the executor, the amendment of 1843 was retro-active, and provided merely a new rule of evidence in the power of the Legislature to prescribe, so as to give this judgment obtained in 1841, a greater force against the heir than it previously possessed; the only effect of the production of

the record, would be to establish *prima facie* that in the year 1841, a debt existed against the estate of the deceased to the extent of $446.88. The record shows the character of the debt, that it was a promissory note ; it also liquidates the amount due on it, but as against the heir, it does not change the debt into a judgment ; on the contrary, the same law which permits the record to be used as evidence, declares in the same breath that, " notwithstanding the *form* of such judgment," the debt for which it was obtained " shall remain a debt against the estate of the deceased to the same extent as before."

The operation of this construction upon the statute of limitations, must in many cases materially affect the rights of parties. The heir has always had the right to set up the statute of limitations in bar to such claims, and the admission of the executor or administrator has not been deemed to revive debts barred by the statute, so as in any way to affect the real estate. (*Mooers* vs. *White*, 6 *J. Ch. R.*, *p.* 378.) On application to the Surrogate for authority to sell the real estate, this privilege is expressly secured to the heir or devisee. (2 *R. S.*, 3*d ed.* § 13, *p.* 165.) If then, by the recovery of a judgment against the executor or administrator, the debt is converted from the form of a promise to that of a judgment, a twenty years' limitation would take the place of the limitation of six years. This would be a great inroad upon the rights of those who are entitled to the real estate. It is quite enough to follow the statute in admitting the judgment as *prima facie* evidence of the debt. To make the debt substantially a *judgment* against the heirs or devisees, and to clothe it with all the attributes of a judgment, instead of leaving it where it was, a simple contract debt against the estate of the deceased, would be a clear transgression of the very rule the Legislature has laid down, that the debt shall remain a debt to the same extent as before. I am bound, therefore, to hold under the most favorable view of this case that can possibly be taken, that the objection of the

statute of limitations interposed by the heirs, to this claim, is well taken. There is no difficulty in fixing the time from which the statute begins to run. The rule is the same in the present instance as in other cases of simple contract debts. But even if the date of the recovery of the judgment be taken for that purpose, as affording a certain period at which the debt was established as a subsisting liability, six years have passed since December 30, 1841, so as to bar the claim.

There is also another difficulty in this case to which it is proper to allude. In *Mooers* vs. *White*, Chancellor Kent was of the opinion that the power of the Surrogate to decree a sale of the real estate for the purpose of satisfying the claims of creditors, ought to be invoked within a reasonable period after the administration had commenced. At that time there was no specific period prescribed within which the application must be made. The executor or administrator was bound to apply as soon as conveniently might be, after discovering or suspecting that the personal estate was insufficient to pay the debts; but so far as the express letter of the law stood, the proceeding might be instituted at any time. It was evident, therefore, that unless some equitable restriction was imposed upon the exercise of so broad a discretion, the power of the creditor through the medium of the personal representative to reach the real estate, constituted, in the vigorous language of Chancellor Kent, a "hidden and tremendous lien," of the most dangerous character. It was the opinion of that learned jurist, that a year was a reasonable period for the enforcement of such a right. In the case of *Jackson* vs. *Robinson*, (4 *Wendell's R.*, *p.* 442,) fourteen years was declared to be "an unreasonable length of time" to delay making the application. The Revised Statutes, however, expressly provided the limitation of three years within which the application must be made, and it appears that this restriction of time was imposed "in conformity to the suggestion of Chancellor Kent, in 6 *John. Ch. Rep.*, 360."

(*Revisers' Notes*, 2 *R. S.*, 2*d ed. p.* 646.) This settled a definite time, after the expiration of which, the power of the Surrogate to authorize a sale of the real estate ceased. (*Hyde* vs. *Tanner*, 1 *Barbour's Sup. Ct. R.*, 75.)

The original 48th Section, Title 4, part 2, c. 6, of the Revised Statutes, was the first statutory provision which authorized creditors to compel executors or administrators to apply to the Surrogate for leave to sell the real estate. It was repealed by the 74th section of the act of 1837 " concerning the proof of wills," &c., and a substitute for it given in the 72d section of the last named act. This substitute, which appears to have been overlooked in the case of *Hyde* vs. *Tanner* above cited, expressly prohibits the executor or administrator from assigning " for cause why he should not be ordered to sell real estate, that the time within which he is allowed to sell the same has expired." While, therefore, on his own voluntary application, the executor or administrator cannot so apply after three years subsequent to the granting of letters, yet on the application of creditors, he may be ordered to sell the real estate at any time. So far as relates to compulsory proceedings on the part of creditors, then, the law stands in regard to the time the application may be made, precisely the same as before the Revised Statutes.

The question now is, whether the Surrogate has not a discretion in granting the order of sale, where creditors institute proceedings after the expiration of three years. It is to be observed, that on a voluntary application by the executor or administrator, the law having fixed three years as a reasonable time within which the application should be made, it is expressly said that the Surrogate, after ascertaining the debts, &c., " *shall* " order the real estate to be mortgaged, leased, or sold. But on the compulsory proceeding instituted by a creditor, the language of the statute is, that the Surrogate " *may* order" the sale. Thus where the time is limited, the language is mandatory; where the time is not limited, the expression used is merely

permissory. Apart from the conclusion to be drawn from this variation of terms, I have no doubt, however, that the Surrogate has a discretion as to the time within which he should allow a creditor to invoke the aid of the Court. In *Jackson* vs. *Robinson*, the Supreme Court said, "the law fixes no definite limits within which the proceedings must be commenced," "the time is left to the discretion of the officer;" and the lapse of fourteen years was declared to have been, without some explanation, "a reason for the Surrogate to reject the application." In *Gilchrist* vs. *Rea*, (9 *Paige's Ch. R.*, 73,) Chancellor Walworth thuss peaks of the discretionary power in question: "I will not say that in no conceivable case under the former statute the Surrogate would be authorized to make an order, where the administrators had neglected to make their application after the lapse of several years. But to justify the Surrogate in making an order after such a lapse of time, the executors or administrators applying for the order, must at least state in their petition, that new debts, which were valid and subsisting claims against the estate, had recently been discovered. And if more than six years had elapsed, they would also be bound to show that the debts were of such a nature that they were not barred by the statute of limitations." The lapse of time in that case was nine years after the granting of the letters of administration. The proceedings now before me, were not commenced until more than twelve years after letters testamentary were issued, and no excuse is shown why the party failed to take earlier measures for the payment of his claim. It seems to me that the present case is one eminently calling for the exercise of the equitable discretion of the Surrogate, in refusing to aid a party who has been so dilatory in seeking the enforcement of his claim. A sale by order of the Surrogate reaches all the estate of which the deceased was seized at the time of his death, and affects the *bona fide* purchaser equally with the heir or devisee, and unless some limit be imposed upon the

exercise of this power, the hidden lien of the creditor will continue to run until he thinks fit to enforce it, while in the mean time, those to whom the estate has descended, are uncertain of their rights, and are restrained in the enjoyment of their property. "Public policy requires that a power of such formidable import should be strictly construed." I feel compelled, therefore, in all proceedings instituted by creditors, to require that the application be made within a reasonable period, and wherever there has been unreasonable delay beyond the period of three years, to refuse the order for the sale of the estate. In this matter my opinion is adverse to the claim of Ferguson on the several grounds : 1. That by the law applicable to the judgment at the time of its recovery, the judgment affords no evidence of indebtedness as against the real estate ; 2. That even by the amendment of 1843, the judgment against the executor is only evidence of the debt, and does not change its form ; so that the statute of limitations may be pleaded to the claim as a simple contract debt ; and 3. That the application is not made within a reasonable period after the granting of the letters testamentary.

Any one of these objections would be fatal. It is my conclusion, therefore, that good cause has been shown by the heirs why the real estate should not be sold. The petition must be dismissed, and as the executor obtained the order on the suggestion of Ferguson, the latter must pay the costs of the widow and heirs.

Note.—The first section of the Title relative to sales of real estate by executors and administrators, as it originally stood in the Revised Statutes, contained a provision that the application might be made to the Surrogate after they had filed an inventory " *and shall have rendered an account of their proceedings to the Surrogate, and the same shall have been allowed and settled.*" This clause was stricken out by § 22, *Laws,* 1830, *Ch.* 320, *p.* 388. By the 72d section of the act of 1837, in proceedings by creditors, they were authorized to apply "after the rendering of an account by an executor or administrator to a Surrogate."

Thus on a voluntary application by an executor or administrator, an

accounting is no longer requisite to be had, before the Surrogate can acquire jurisdiction; but an accounting is necessary, before a creditor can apply.

