MADISON COUNTY—HON. SIDNEY T. HOLMES, SURROGATE—June, 1859.

## COLSON *v.* BRAINARD.

*In the Matter of the application of the administrators of*
EBENEZER COLSON, *deceased, to mortgage, lease, or sell his real estate to pay his debts.*

At common law, neither the admissions of an executor or administrator, nor a judgment against him, can in any way bind the heir or devisee, or affect the real estate derived from his testator or intestate.

Upon the hearing of an application of the administrators for authority to sell so much of the real estate of the intestate as may be necessary to pay his debts, it is competent for a devisee of the real estate in question, or any persons claiming under him, to contest the legality or validity of a judgment obtained against the administrators, like any other claim or demand against the estate. The judgment is only *prima-facie* evidence of the debt of the intestate, and like all other *prima-facie* evidence, is

liable to be controverted, impeached, or entirely disproved by any competent evidence.

The devisee being let in to contest the judgment, it was ordered that it be sent to the circuit on an order for a trial, under section 72 of the Code of Procedure.

This was an application on the part of Rollin Colson and Noble S. Colson, administrators of Ebenezer Colson, deceased, for authority to mortgage, lease, or sell the real estate of the intestate, to pay his debts, under section 40 of chapter 460 of the Laws of 1837. (3 *Rev. Stat.*, 5 ed., 187, § 2.)

In the list of debts annexed to the petition is a judgment in favor of Josiah Colson against the administrators, for $1137.65 damages and costs, perfected and docketed July 7, 1858.

The petitioners were appointed administrators, April 14, 1856, and the judgment was recovered upon a claim against the deceased, presented to the administrators, and by an agreement in writing between them and the claimant, and the approval of the surrogate, referred, in pursuance of the statute, to Orrin Willey, Damon Richmond, and Aaron D. Dunbar. (See 3 *Rev. Stat.*, 5 ed., 175, § 41.) Prior to the hearing Mr. Dunbar resigned, and refused to act, and upon the application of the claimant at a special term of the Supreme Court, an order was made, appointing Ira P. Barnes a referee in place of said Dunbar, and directing said referees to hear said claim and report thereon to the Supreme Court.

The referees heard the claim, the administrators and the claimant each appearing with counsel; and the referees on the 19th day of May, 1858, made their report, by which they found that there was due the claimant the sum of $1010, and interest from September 5, 1857, that being the day when the claim was presented to the administrators. No order confirming this report was obtained, and judgment was perfected and docketed thereon for $1069.68 damages, and $67.97 costs.

By the petition it appears that William G. Brainard has become the owner, by purchase from some of the heirs, of an

interest in the real estate of deceased, which is sought to be sold by the petitioners; and he was duly served with notice of the hearing. Since the proceedings were instituted, Mr. Brainard has died, and his widow and heirs have appeared and been substituted in his place, and object to the claim of Josiah Colson above stated, upon the following, among other grounds, viz. :

I. The judgment is void for the reason that the referees were not appointed in the manner required by statute, the Supreme Court having no power to appoint Ira P. Barnes one of the referees. That such appointment should have been made by the agreement, in writing, of the parties, and the approval of the surrogate.

II. Said judgment is void for the reason that no order was obtained confirming the report of the referees as required by statute.

III. The judgment is not conclusive upon them, and they ask to be allowed to contest said claim. And they aver that the whole, or a large portion of said claim, is barred by the Statute of Limitations. That the claim is for the services of said Josiah Colson, who is a son of the deceased, rendered or performed while residing in the family of his father, embracing the entire period from 1809, when claimant became of age, to March, 1856, when Ebenezer Colson died. That said claimant was maintained and supported during all this time by his father. That he was feeble in mind and body, and that the services rendered were not worth his support. That there was no contract or agreement of any kind between said Ebenezer and Josiah Colson, that the latter should receive pay for his services. And that such services, whatever may have been their value, were fully paid for by Ebenezer Colson prior to his death.

J. MASON, *for the Widow and Heirs of William G. Brainard.*

J. B. ELDRIDGE, *for Josiah Colson, the Claimant.*

COLSON *v.* BRAINARD.

S. S. ABBOTT, *for the Administrators.*

He objects to a rehearing of the claim, and presents a written protest of heirs owning an interest equal to seven-elevenths in the real estate of said deceased against a rehearing of said claim.

THE · SURROGATE.—I have not examined the objections made to the regularity of claimant's proceedings in procuring the appointment of Barnes as a referee, and the entering of his judgment without an order confirming the report, for the reason that the conclusions I have come to, upon the last objection made to the judgment, render it unnecessary.

At common law, neither the admissions of an executor or administrator, nor a judgment against him, could in any way bind the heir or devisee, or affect the real estate derived from his testator or intestate. (*Osgood* v. *Manhattan Co.*, 3 *Cow.*, 612; *Spraker* v. *Davis*, 8 *Id.*, 132; *Baker* v. *Kingsland*, 10 *Paige*, 366, 368; *Mooers* v. *White*, 6 *Johns. Ch.*, 360, 373; 1 *Cow. & Hill's Notes,* 403, ed. of 1850; 2 *Id.*, 7, note 10.) This being the rule at common law, let us see how it has been modified, if at all, by statute.

It is provided (3 *Rev. Stat.*, 5 ed., 747, § 12), "That the real estate which belonged to any deceased person shall not be bound, or in any way affected by a judgment against his executor or administrator, nor shall it be liable to be sold by virtue of any execution issued upon any such judgment."

By this provision, the real estate of a deceased person is placed beyond the reach of a judgment against his executors or administrators, and is not to be bound or in any way affected thereby.

As to the effect of such a judgment, when an application is made to sell the real estate of a deceased person to pay his debts, the statute provides, "That when a judgment has been recovered, or a decree obtained against an executor or administrator for any debt due from the deceased, and there are not sufficient assets in the hands of the executor or administrator to satisfy the same, the debt for which the judg-

ment or decree was obtained shall, notwithstanding the form of such judgment or decree, remain a debt against the estate of the deceased to the same extent as before, and to be established in the same manner as if no such judgment or decree had been obtained, provided that when such judgment or decree has been obtained upon a trial or hearing upon the merits, the same shall be *prima-facie* evidence of such debt before the surrogate." (3 *Rev. Stat.*, 5 ed., 196, latter part of § 59 ; *Laws of* 1837, ch. 460, § 72, as amended by *Laws of* 1843, ch. 172, and *Laws of* 1847, ch. 298.)

The judgment in this case was obtained after a hearing upon the merits, and this provision makes it *prima-facie* evidence of the debt upon this application. It divests it of the character and force of a judgment, and makes it in the first instance evidence of the extent of the claim ; but like all *prima-facie* evidence, liable to be controverted, impeached, reduced, or entirely disproved by any competent evidence.

No other construction would give any force to this provision. If, upon a hearing, the claim cannot be controverted like any other claim, then the judgment is conclusive, instead of *prima-facie* evidence of the debt. The judgment does not even change the character of the debt, or prevent the Statute of Limitations from running against it. It is not evidence of the costs of the suit ; and they cannot be included in the debt and charged upon the real estate. (*Ferguson* v. *Broome*, 1 *Bradf.*, 10 ; *Skidmore* v. *Romaine*, 2 *Id.*, 122 ; *Sandford* v. *Granger*, 12 *Barb.*, 392 ; *Dayton's Surrogate*, 2 ed., 559, 560.)

If the judgment does not change the character of this claim, and it remains a simple debt against the estate of the deceased, then the persons representing the interest of Mr. Brainard in the real estate of deceased, should be allowed to litigate the validity and extent of the claim, and set up against it the matters stated in their third point. For it is further provided that " on such hearing it shall be competent to any heir or devisee of the real estate in question, and to

any person claiming under them, to show that the whole of the personal estate of the deceased has not been duly applied by the executors or administrators to the payment of his debts, to contest the validity and legality of any debts, demands, or claims which may be represented as existing against the testator or intestate, and to set up the Statute of Limitations in bar to such claims; and the admissions of any such claims so barred, by any executor or administrator, shall not be deemed to revive the same, so as in any way to affect the real estate of the deceased." (2 *Rev. Stat.*, 5 ed., 188, § 13.)

This provision secures to the heirs or devisees, or any person claiming under them, the right, upon the hearing, to litigate or contest the legality or validity of any claim, and set up the Statute of Limitations. And the concluding portion of the section evinces the determination of the Legislature to carry out the doctrine of the common law, and protect the real estate from being bound or affected by the acts or admissions of the executor or administrator.

The heirs or devisees of Mr. Brainard are, therefore, entitled to be let in to litigate or contest this claim, and I cannot refrain from saying, that it is a principle of justice, in harmony with all law, that every person whose property is liable to be taken for the payment of a claim of this nature, should have an opportunity to be heard when the amount of that claim is fixed or liquidated.

It is also provided that " If, upon such hearing, any question of fact shall arise, which, in the opinion of the surrogate, cannot be satisfactorily determined without a trial by jury, he shall have authority to award a feigned issue, to be made up in such form as to present the question in dispute, and to order the same to be tried at the next Circuit Court to be held in such county." (3 *Rev. Stat.*, 5 ed., 189, § 14.)

By section 72 of the Code, feigned issues are abolished, and an order for a trial is substituted, which shall state the question of fact to be tried, and which shall be the only authority necessary for a trial. As the counsel for the claim-

ant has requested that if a rehearing of this claim is ordered, it be sent to the circuit for trial, I am quite willing to assent to this request, trusting that this desire on the part of the claimant's counsel, coupled with the amount of the claim, and the principles involved in it, will be regarded by the justice who shall hold the circuit, as a sufficient reason for sending there for trial a case that in most instances would be sent to a referee for decision.

The parties interested may draw up such an order as will present, plainly and distinctly, the questions to be litigated in this case.