FITCH *vs.* WITBECK and others.

*It seems* that a surrogate is not authorized to make an order for the sale of the real estate of a decedent, for the mere purpose of paying the executors or administrators the amount of their claim for the expenses of administration; and where there are no existing debts for which the devisees, or heirs at law of the decedent, are liable in respect to the real estate which had come to them, by devise or descent.

It is the duty of executors and administrators to retain sufficient of the personal estate of the decedent, in their hands, to pay the expenses of the administration. And they cannot apply to the surrogate for the sale of the real estate of the decedent, to pay such expenses, after the lapse of three years from the time of granting letters testamentary, or of administration, to them.

All of the executors, or administrators, should join in an application to the surrogate, for an order to sell the real estate of the decedent for the payment of debts. And an order allowing part of the administrators to make such a sale, without the consent or concurrence of the others, is erroneous.

THIS was an appeal, from an order of the surrogate of the county of Rensselaer, directing the sale of the real estate of J. J. Van Alstyne, deceased. The petitioners, together with the widow of the decedent, were appointed administrators of his estate, in September, 1834. In June, 1835, they applied to the surrogate for the sale of the real estate, or a part of it, for the

payment of debts. And such proceedings thereon were had that two pieces of land were sold, under the order of the surrogate, and the proceeds thereof were distributed according to law. The respondents afterwards applied for the final settlement of their accounts as administrators. And in July, 1838, the surrogate decided that they had duly administered and accounted for all the personal estate which had come to their hands. He also decided and decreed that there was due, from the estate of the deceased, to Witbeck, one of the administrators, $81,83, and to Brockway, another of the administrators, $69,43.

In June, 1839, Witbeck and Brockway, without the concurrence of the administratrix, presented a petition to the surrogate, stating these facts, and also stating that S. McClellan had a debt of about $50 against the decedent ; and that there were other creditors of the deceased, the amount of whose respective debts were unknown to the petitioners, but that the petitioners believed the aggregate amount of such debts amounted to about $2500. They therefore prayed for a sale of other portions of the estate of the decedent, to pay and satisfy those debts. An order was thereupon made, for the persons interested in the real estate to show cause why the prayer of the petition should not be granted. And, upon the day specified in the order, the appellant, and others interested in the real estate of the decedent, appeared, by their counsel, and filed the following objections before the surrogate : *First*, that the application was not made within three years from the time of granting letters of administration. *Secondly*, that it did not appear that the personal estate of the decedent had been exhausted in the payment of debts. *Thirdly*, that it did not appear that the debts were due from the decedent. *Fourthly*, that two of the administrators could not make the application without the concurrence of the other. And, *Fifthly*, that there had been one sale, and that the creditors had not been notified to produce and exhibit their claims.

The surrogate, notwithstanding these objections, made an order, reciting that such proceedings had been had upon the

*Fitch v. Witbeck.*

petition, before him, that he was satisfied, upon due examination of the premises, that the administrators had fully complied with the provisions of the statute, and that the debts outstanding against the deceased, so far as the same could be ascertained, were about the sum of $156; and authorizing the said administrators to sell a certain specified portion of the real estate of the decedent, to enable them to pay his debts.

*J. Rhoades,* for the appellant.

*H. P. Hunt,* for the respondents.

The Chancellor. From a careful examination of the provisions of the revised statutes, I am satisfied that several of the appellant's objections to the proceedings before the surrogate were well taken. The return states that the order appealed from was made after hearing the proofs and allegations of the parties. No proofs, however, are returned by the surrogate. But the return states that it appears by the minutes of the surrogate, that upon the hearing before him, the administrators abandoned all claim for authority to mortgage or sell the real estate of the decedent, except for the purpose of paying the claims of the administrators. The return also states that it appeared, by the proofs, that their claim was for the amount allowed them, upon the final settlement of their accounts, for disbursements, expenses and commissions in the administration of the estate; and for the surrogate's fees and charges, upon the application for the final settlement of their accounts as administrators. It is evident, therefore, that no part of the $156, for the payment of which this order of sale was made, was a debt due from, or owing by, the decedent. Nor was it a part of the debts which the surrogate, upon making the first order of sale, in 1835, allowed and adjudged to be valid and subsisting demands against the estate of the deceased. (*See* 2 *R. S.* 102, § 13.) This proceeding, therefore, was not a continuation of the application made in 1835. But it was an original application, on the part of the administrators as such,

and not by the creditors of the decedent, for a further sale of real estate to pay debts which were not allowed by the surrogate upon the making of the first order. They were therefore bound to make their application within three years after the granting of the letters of administration to them, in 1834.

It is very doubtful also whether the surrogate is authorized to make an order for the sale of the real estate of the deceased for the mere purpose of paying the executors or administrators their claim for the expenses of administration; where there are no existing debts for which the devisees, or heirs at law of the decedent, were liable in respect to the real estate which had come to them, by devise or descent. The executor or administrator should retain sufficient of the personal estate in his hands to pay the expenses of the administration. The petitioners in this case, upon the completion of the first sale, should have brought in their whole claim, for expenses and commissions then due to them, for those proceedings; so that the amount of such claim might be deducted from the proceeds of the sale. And if they had paid any debts out of the personal estate, so that there was not enough left to pay their expenses of administration, they should then have asked to be subrogated to the rights of the creditors, whose debts had been thus paid, in the distribution of the proceeds of the sale of the real estate; if the surrogate had any power to allow of such a substitution.

But even if these petitioners had been original creditors of the decedent, they were not authorized, in their character of administrators, after the expiration of the three years, to apply for a sale of real estate, to pay debts which were not allowed by the surrogate at the time of the making of the first order. The seventy-second section of the act of May, 1837, (*Laws of 1837, p.* 536,) allows a creditor of the deceased to make an application to the surrogate for an order to compel the executors and administrators to sell. But that proceeding must be instituted and conducted according to the original provisions of the revised statutes, on that subject, by citing the personal representatives of the testator, or intestate, to show cause why

they should not be compelled to proceed before the surrogate for a sale of his real estate.

I am also inclined to think it was a valid objection to the proceedings of the respondents, in the present case, that the administratrix did not join with them in the application. And that the order is erroneous in allowing the administrators to make the sale without her consent and concurrence; especially as no reason is stated in the petition for not making her a party to the proceedings.

The order appealed from is erroneous, and must be reversed; and the petition of the respondents must be dismissed. But under the circumstances of this case I shall not charge them with costs.