## WOOD and others *vs.* BYINGTON.

The 13th section of the title of the revised statutes relative to the sale of the real estate of a testator or intestate, is not applicable to a decree in chancery against administrators, after the death of their intestate; so as to make such decree conclusive evidence of the indebtedness of the decedent, as against the heirs and other persons interested in his real estate, upon a proceeding before the surrogate for the sale of such real estate to pay debts.

But a decree against the administrators is conclusive evidence of the indebtedness, as against them, upon the hearing before the surrogate on the preliminary order, requiring them to show cause why they should not be ordered to mortgage, lease, or sell the real estate of the intestate, for the payment of his debts.

The administrators are estopped, by such a decree, from alleging that the debt was not due at the time the decree against them was rendered; or from insisting that the claim of the creditor was barred by the statute of limitations, previous to the commencement of the suit in which the decree was entered.

A decretal order in a suit in chancery, made during the life of the defendant in such suit, establishing a partnership between him and the complainant, and directing an account to be taken between them in reference to the partnership transactions, is conclusive evidence against the heirs of such defendant, as well as against his personal representatives, upon a proceeding before the surrogate for the sale of the real estate of the deceased defendant, for the payment of his debts—not only of the existence of the partnership but also of the right of the complainant in that suit to call him to account; and also that such right was not barred by the lapse of time, or otherwise, at the time such decretal order was made.

Although a suit in chancery abates, by the death of one of the parties, after the making of a decretal order therein, directing an account to be taken between the parties, the rights established by such decretal order are not lost, or impaired, by such abatement of the suit.

The act of April, 1843, to amend the act concerning the proof of wills, &c. was not retroactive in its operation; so as to make a decree against administrators which had been obtained previous to its passage for a debt due by their intestate, prima facie evidence of the amount of the debt as against the heirs and other persons interested in the real estate of the intestate.

Whether the legislature can rightfully declare that the result of a litigated suit against one person shall be evidence against another, to affect rights of the latter which had accrued previous to the passage of the statute ? *Quære.*

The act of April, 1843, does not charge the real estate of a decedent with the costs of the suit in which a judgment, or decree, against his personal representatives has been obtained. It only makes the judgment, or decree, presumptive evidence of the existence and of the amount of the debt due from the decedent; for the purpose of an application to the surrogate for an order to sell the real estate.

That statute does not authorize the surrogate to direct the sale of real estate of a

Wood *v.* Byington.

deceased debtor to pay costs which had not been awarded, to the creditor, against the decedent, at the time of the death of the latter.

Upon an application to a surrogate, by a creditor whose debt has been liquidated by a decree in chancery, for the sale of the real estate of a deceased debtor, parol testimony cannot be received to show upon what evidence the master based his decision as to particular items of the account, on the reference to take an account in the suit in which the creditor's decree was obtained. But to rebut the prima facie evidence of the correctness of the master's decision, the whole evidence before him should be produced.

THIS was an appeal, by the heirs and tertenants of T. M. Wood deceased, from an order of the surrogate of the county of Onondaga, establishing a debt against the estate of the decedent, and directing the surviving administrator to sell certain real estate, of which the intestate died seised, for the payment and satisfaction of that debt.

The respondent, in 1825, filed his bill in the court of chancery against T. M. Wood, the decedent, for an account and settlement of certain partnership transactions arising out of a copartnership which had existed between the parties some years before that time. The cause was heard upon pleadings and proofs. And in October, 1833, the vice chancellor of the fifth circuit, to whom the cause had been referred for hearing and decision, made a decree establishing the partnership, and directing that an account should be taken between the parties in reference to the partnership transactions; and giving special directions as to the manner of taking the account, and the mode of charging interest, and directing that each party should be charged with such portions of the real estate as he had sold or taken the exclusive possession of, for his own use and benefit; reserving all other questions and directions until the coming in of the master's report. That decree was affirmed by the chancellor, upon appeal, with a slight modification. And Wood, the defendant, having died in 1836, after the argument but before the decision of the chancellor upon that appeal, the decree of affirmance was directed to be entered nunc pro tunc as of the time of such argument.

Letters of administration were granted upon the estate of the decedent in February, 1836, and the cause was subsequently

Wood v. Byington.

revived against the administrators. Upon the taking of the account before the master, which commenced in October, 1837, the administrators appeared and litigated the matter. And they excepted to the master's report, and to his further report, and were heard before the vice chancellor upon those exceptions, and upon the equity reserved in the decree of October, 1833, and before the chancellor upon one appeal to him from the decision of the vice chancellor on exceptions to the master's report. The balance found due from the decedent upon that accounting, as settled by the vice chancellor, upon exceptions to the master's amended report, and affirmed by the chancellor upon appeal, was $4,869,02, with interest from the first of May, 1839 ; which was the date of the master's first report. For that amount, together with the costs of the suit, the vice chancellor made a decree against the surviving administrators, on the 2d of May, 1843; and he directed the amount of the debt, interest, and costs to be paid and collected from the personal estate of the intestate in the hands of his surviving administrators. The costs of the suit, previous to the death of T. M. Wood, were taxed at $254; and the costs subsequent to that time at $550,58.

The respondent being unable to collect his decree of the surviving administrators, applied to the surrogate, in September, 1843, for an order that they should show cause why they should not be directed to sell certain real estate of which the intestate died seised, to pay the amount of the decree. Upon the return of the citation the administrators appeared and objected that the decree was not evidence of an indebtedness for which they could be required to sell real estate ; and made various other objections which were overruled by the surrogate. And the usual order was thereupon made, directing all persons interested in the real estate of the intestate to show cause why authority and directions should not be given to the administrators to sell. Upon the return of the citation, the heirs and occupants of the lands appeared by their counsel; and the claimant then produced in evidence the enrolled decree. The counsel for the appellants thereupon objected that the decree against the administrators was not evidence

against the persons interested in the lands, so as to authorize the surrogate to make an order of sale. They also alleged that the respondent's debt had been paid; that the decree was obtained by fraud; that the claim was barred by the statute of limitations before the commencement of the suit, against the intestate, in the court of chancery; that the time for applying to the surrogate had elapsed before this application was made; that an order was made and published in August, 1836, requiring the creditors to exhibit their claims against the estate of the decedent, on or before the fourth Monday of February, 1837, and that the respondent never presented any claim to them; that they had obtained two orders for the sale of real property of the decedent, for the payment of debts, and had brought the proceeds of the sales into the surrogate's office for distribution, and that the surrogate had given due notice to the creditors to appear before him, in December, 1842, and exhibit and prove their claims against the estate, for the purpose of enabling him to make a distribution of the proceeds of such sales among the creditors; and that the respondent did not appear and prove his demand or make any claim therefor; that in 1841, the accounts of the administrators were finally settled before the surrogate, as to the administration of the personal estate; on which occasion all the creditors were duly notified to attend such settlement, but the respondent did not attend to make any claim; and that the rights and interests of several of the heirs to the lands of the intestate had been sold and conveyed to bona fide purchasers before the institution of these proceedings.

The counsel for the appellants thereupon offered to prove, by testimony not produced before the master, that the statement of the accounts by the latter was incorrect, and that the claims allowed by him were not valid claims against the estate of the intestate. And the surrogate, after hearing counsel for the several parties, decided that as against the heirs and other persons interested in the estate of the decedent upon this proceeding, the decree was only prima facie evidence of the indebtedness, and that they were at liberty to introduce proof to impeach it. Both parties then introduced evidence in relation to the contest-

ed items of the account. And the surrogate thereupon decided and decreed that the estate of the deceased was indebted to Byington on the 24th of September, 1845, the day of the date of that decree, in the sum of $7,973,64. This amount included the whole debt and costs and interest decreed by the vice chancellor to be paid, including the interest on the costs from the 25th of July, 1843, when those costs were taxed. And the decree or order of the surrogate directed G. Lawrence, the then sole surviving administrator, to sell certain real estate of the intestate, described in such order, to satisfy the debt declared by the surrogate to be due to the respondent.

*G. Lawrence*, for the appellants.

*J. R. Lawrence*, for the respondent.

THE CHANCELLOR. The first question for consideration, on this appeal, is as to the effect of the decree in chancery, of May, 1843, as evidence of the indebtedness of the intestate, as against the heirs and other persons interested in his real estate. The counsel for the respondent is wrong in supposing that the 13th section of the title of the revised statutes, relative to the sale of real estate of a testator or intestate, (2 *R. S.* 102,) is applicable to this case; so as to make the decree of the vice chancellor conclusive evidence of the indebtedness of the decedent, as against the persons interested in his real estate, upon a proceeding before the surrogate for the sale of such real estate to pay his debts. That section is in terms limited to judgments recovered against executors or administrators in courts of law. The decree, however, was conclusive evidence of the indebtedness, as against the administrators, on the hearing upon the preliminary order, requiring them to show cause why they should not be ordered to mortgage, lease, or sell the real estate for the payment of the debts. None of the objections made by them, therefore, upon the hearing on that preliminary order for the administrators to show cause, were well taken. For, by the decree in the chancery suit, they were estopped from

alleging that the debt was not due at the time of the decree against them, or that the respondent's claim was barred by the statute of limitations before the chancery suit was commenced.

And, against the heirs and other persons interested in the real estate of the intestate, the enrolled decree, even if it was not prima facie evidence of the indebtedness, was properly received in evidence by the surrogate. For the decretal order of October, 1833, made in the lifetime of the intestate, was conclusive evidence against his heirs, as well as against his personal representatives, not only of the existence of the partnership but also of the right of the complainant to call him to account; and that such right was not barred by lapse of time, or otherwise, at the time that decretal order was made. It likewise settled the principles upon which the account was to be taken between the parties. So that if the present proceedings had been instituted previous to the revival of that suit against the administrators, the surrogate, in ascertaining the indebtedness of the intestate, would have been bound to take the account between the parties upon the basis of the decretal order of October, 1833. For, although the suit abated by the death of the defendant, the rights established by that decretal order were not lost or impaired by such abatement.

The proviso to the act of the 18th of April, 1843, to amend the act concerning the proof of wills, &c. (*Laws of* 1843, *p.* 229.) and which became a law on the eighth of May, in the same year, declares that a judgment or decree, against an executor or administrator, obtained upon a trial or hearing upon the merits, shall be prima facie evidence of the debt before the surrogate. It will be seen that this act went into operation six days subsequent to the final decree of the vice chancellor, against the administrators, and some months after the decree upon the exceptions, which finally determined the balance due from the intestate, to the complainant in the chancery suit, including the interest to the first of May, 1839. And the question is, whether this act of April, 1843, is retroactive in its operation; so as to make a decree which had previously been

Wood v. Byington.

obtained against the administrators, prima facie evidence of the existence of the debt as against the heirs and others interested in the lands, who have had no opportunity to contest the suit: and who, during the pendency thereof, had no interest in the result. A statute so materially affecting the rights of third persons, who were mere strangers to the suit, ought to be construed strictly. Indeed, it is a matter of doubt whether the legislature can rightfully declare that the result of a litigated suit against one person shall be evidence against another, to affect rights of the latter which had accrued previous to the passage of the statute establishing such a rule of evidence. I therefore conclude, in this case, that the decree against the administrators, before the act of April, 1843 took effect as a law, was not even prima facie evidence of the amount of the debt, as against those who were interested in the real estate of the decedent.

Rejecting the decree, however, even as prima facie evidence of the state of accounts between the complainant in that suit and T. M. Wood, and having reference to the decretal order of October, 1833, merely as establishing the right to an account, and the principles upon which that account was to be taken between the parties, I think there was sufficient evidence before the surrogate, to show that the balance due to the respondent, was as much as was finally allowed in the chancery suit; including the interest as it was directed to be computed by the decretal order of 1833.

The surrogate erred, however, in including the costs of the chancery suit, and the interest upon those costs, as a part of the debt due to Byington; for the payment of which the administrator was to be directed to sell real estate. At the time of the death of T. M. Wood no decree had been made establishing the right of the complainant Byington to costs. The act of April, 1843, does not charge the real estate with the costs of the suit in which the judgment or decree against the personal representatives is obtained; but merely makes the judgment or decree presumptive evidence of the existence and the amount of the debt due from the testator; for the purposes of

the application to the surrogate for an order of sale. It may be perfectly equitable and just that the costs of the litigation with the executor or administrator, and also those incurred in the lifetime of the decedent, should be charged on the real estate ; where they have been awarded against his personal representatives ; to be paid out of the estate in their hands. But the statute has not authorized the surrogate to direct the sale of real estate to pay costs, which had not been awarded to the creditor, against the decedent, at the time of his death. For these reasons, the sum of $926,60, being the amount of the costs and the interest thereon from the time of taxation, which the surrogate erroneously included as a part of the debt due from the estate on the 24th of September, 1845, must be deducted ; and the order appealed from must be so modified as to declare that a balance of $7,047,04, only was due, at the last mentioned date.

- The surrogate was right in refusing to permit parol testimony to be given as to the particular evidence upon which the master based his decision as to certain items of the account. If these appellants wished to show what testimony was given before the master, they should have called for all the evidence before him ; as the same was taken down and certified to the court, upon the hearing of the exceptions. And the testimony of the administrator was properly rejected ; because it appeared that he was interested in resisting the application—he having guarantied the payment of the bond and mortgage upon the premises which he had assigned.

The neglect to report the debt to the administrator, is not a bar to the proceedings against the lands of the decedent, and the subsequent decree in the chancery suit was conclusive evidence that the complainant's demand was not barred as against the administrators. Neither does there appear to have been any irregularity in the taking of the testimony.

The order appealed from must, therefore, be modified as to the amount, in the manner before suggested ; and in all other respects it is to be affirmed. Neither party is to have costs as against the other, upon this appeal. The decree is to be enter-

ed nunc pro tunc, as of the time when the answer to the petition of appeal was filed, and the proceedings are to be remitted to the surrogate of the county of Onondaga.