SANFORD, appellant, *vs.* GRANGER and others, respondents.

Upon an application to the surrogate, by the plaintiff in a judgment recovered against administrators, upon an indebtedness of their intestate, for an order to sell the real estate of the intestate, the applicant need not show any thing, in the first instance, but the record of his judgment, in order to prove his debt, and the amount of it; but that will not prove that the heir or devisee is liable to pay the debt. To establish that liability, the creditor must prove the fact that there are not sufficient assets in the hands of the administrators to satisfy the same. Without such proof, the judgment is no evidence of a debt against the heirs at law.

Costs, awarded against executors, can in no event be a charge on real estate in the hands of an heir.

An appellate court may, and ought to, take an objection apparent on the record, and which goes to the merits of the cause, although not taken in the court below; especially where the rights of infants are concerned.

The rendering of an account by one of several administrators is not enough to authorize an application to the surrogate, by a judgment creditor, for an order to sell the real estate of the intestate. The administrators are all bound to account; and it is the duty of the creditor to compel them all to account, before he has any right to call upon the heirs at law to pay a judgment recovered against the administrators.

PREVIOUS to the 2d of September, 1846, Harvey Granger died intestate, and on that day letters of administration of his goods and chattels, were duly granted by the surrogate of the county of Saratoga, to Maria Granger, his widow, Giles J. Slocum and Harvey F. Granger. The appellant, on the 19th of August, 1848, recovered a judgment, after a trial at law, before a referee, on the merits, against the said Maria Granger, administratrix, and Giles J. Slocum and Harvey F. Granger, administrators of the estate of the said Harvey Granger, deceased. The referee reported that he found there was due from the estate of the said Harvey Granger, deceased, to the appellant, the sum of seven thousand four hundred and forty-seven dollars and fifty-four cents, besides his costs and charges by him about that suit in that behalf expended. Upon that report judgment was entered as follows : " And it is further considered, that the said plaintiff do recover against the said Maria Granger, administratrix, and Giles J. Slocum and Harvey F. Granger, administrators of Harvey Granger, deceased, his damages aforesaid

Sanford *v.* Granger.

by the referee aforesaid in form aforesaid reported, and also four hundred and sixty dollars and one cent, for said costs and charges, in the whole amounting to $7,907,55, and the defendants in mercy," &c. On the 12th of February, 1849, the appellant presented a petition to the surrogate, stating the granting of the letters of administration as above stated, and the recovery of the said judgment, and that the same remained unpaid. That on the 19th day of January, 1849, Giles J. Slocum, who was (as alledged in the petition) the sole acting administrator of the estate, rendered to the said surrogate an account; from which it appeared that there were not sufficient assets to pay the debts of the deceased. That the said Harvey Granger, deceased, died seised of real estate to a large amount, and the petitioner prayed for an order requiring the administratrix and adminis-trators to show cause why they should not be required to mort-gage, lease or sell the real estate of the said deceased for the payment of his debts. Such proceedings were had upon that petition that an order was made by the surrogate requiring all persons interested in the estate to appear before him on the 18th of June, 1849, to show cause why authority should not be given to the said administratrix and administrators to mortgage, lease or sell the real estate of the said deceased, for the pay-ment of his debts; on which day the parties appeared by their respective proctors, and the appellant produced before the said surrogate an exemplified copy of the record of the said judgment, and produced evidence as to the value and situation of the real estate of the deceased; and the respondents contested the legality and validity of the appellant's claim; and the affidavit of the said John Granger was read, setting forth that as he had been informed and believed, and had been advised by counsel, the heirs at law of the said Harvey Granger had a good and substantial defense on the merits, to any claim, debt or demand, which the petitioner had. That afterwards, and on the 24th of August, 1850, "the surrogate adjudged and decreed that the judgment was not prima facie evidence of a debt against the said heirs at law, so as to authorize a sale of said real estate; and that there was no proof before him establishing the debt of the

said Giles Sanford, as against the heirs at law, and upon that ground denied the order to mortgage, or lease, or sell, the real estate of said deceased." From that decree the petitioner appealed to this court.

*S. Stevens*, for the appellant. I. The only question presented by this case is, whether a judgment obtained against the administrators of an intestate decedent, upon a contested trial on the merits, for a debt against the deceased, is prima facie evidence of a debt against him, upon an application to the surrogate by the creditor who has obtained such judgment, for an order to sell the real estate of the deceased for the payment of his debts.

II. It is insisted on the part of the appellant, that such judgment is prima facie evidence of such debt, and therefore all the evidence necessary to be given by the creditor, in the first instance, to sustain such application; and if no evidence be given to impeach such judgment, the surrogate is bound, according to law, to make the order for the sale of the real estate. (1.) By the law of 1830, such judgment was conclusive evidence of a debt against the decedent, on an application, either by the administrators or a creditor, for the sale of real estate to pay the debts of the decedent. (2 *R. S.* 2d ed. *p.* 39, § 1, 3 : *p.* 40, §§ 5, 10, 11, 13 ; *p.* 41, § 14, *sub.* 3 ; *p.* 42, § 18 ; *p.* 44, § 33; *p.* 45, §§ 40, 41, 42 ; *p.* 46, §§ 48, 49, 50 ; 2 *Id.* 3d ed. *p.* 163, § 1; *p.* 165, § 16 ; *p.* 166, § 22.) (2.) The law of 1837 repealed § 48 of the revised statutes, and substituted in its place § 72 of that act, which provided that upon application by a creditor for the sale of real estate, the debt for which the judgment was recovered should be established in the same manner as if no judgment had been recovered. (*Laws of* 1837, *p.* 536, § 72. 2 *R. S.* 3d ed. *p.* 170, § 52.) (3.) The act of 1843 amended § 72 of the act of 1837, by adding this proviso : " *Provided*, that where such judgment or decree has been obtained upon a trial or hearing upon the merits, the same shall be *prima facie* evidence of such debt before the surrogate." (4.) Section 12, **p.** 366, 2 R. S. 2d ed. has no application to this question. That

Sanford *v.* Granger.

section provides, that judgment obtained against executors or administrators shall not affect the real estate of the decedent. The same provision is contained in 1 R. L. of 1813, § 12. There is a wide difference between a judgment being prima facie evidence of a debt against the decedent, and its being a lien upon or affecting his real estate. At common law the real estate of a decedent could not be *extended* by an elegit on such judgment. If the judgment is against them for some misconduct, as wasting the assets, &c. their own property is bound; if it be against them as executors, of course it can not be a lien upon real estate to which they have no title. It entitled the judgment creditor to be first paid out of the personal assets in the hands of the administrator. Moneys arising from the sale of real estate are considered equitable assets; and the object of this statute was to declare that such judgment creditor should have no preference in the distribution of such assets. (5.) But if this were not so, still the law of 1843 must control that of 1813 and 1830. The effect of the law of 1843 is to make the executor or administrator represent the heirs as well as next of kin, as it regards the payment of the debts of the deceased, so far as to make a judgment, obtained against them on a trial on the merits, prima facie evidence of a debt against the decedent upon an application by such creditor to sell the real estate. The idea that the act of 1843 was intended to make such judgment prima facie evidence only against the administrators, is certainly put forth without much consideration. Such judgment is conclusive against the administrators, for all purposes. If they have assets they must pay, and so far as they are concerned in the sale of real estate, it is also conclusive against them. The statute does not authorize them to contest its validity, but does expressly authorize the heirs to do so.

III. Upon the hearing provided by the 54th section, the surrogate, among other things, is to be satisfied that the debt is justly due and owing. If it be any other debt than that mentioned in the proviso of the 52d section, it must have been proved before the order to show cause under that section was granted. That proof is not to be repeated upon the hearing

under the 54th section. The proof establishing the debt under the 52d section, is prima facie sufficient. Precisely so is it in the case of a judgment within the proviso. Prima facie it is evidence of the debt. Upon its production, the surrogate is to grant his order to show cause. If no cause is shown, the order to sell, &c. is to be made. If cause be shown, it must be by disproving what has been established by prima facie evidence. The very form of the proceedings implies that enough has been made out to entitle the applicant to the effect of his proceedings, "if no cause to the contrary be shown." The party required to show cause is himself to be the actor. By the construction of the surrogate the creditor is made the actor. He is to show cause why he ought to have the order, a thing which he was required to establish prima facie before he could have the order to show cause.

IV. The decree of the surrogate should therefore be reversed, and the proceedings remitted, with directions to make the order applied for, unless the respondents by legal proof rebut the prima facie evidence of the debt furnished by the judgment.

V. The respondents should be charged with the costs of this appeal.

*W. A. Beach,* for the respondents. The point presented by the appeal is upon the effect of the judgment as against the heirs. I. The applicant must prove himself a *creditor,* to become entitled to the order of sale. His evidence must be competent in its character, as against the parties to be affected by the determination. II. Upon principle it is quite clear that a judgment against the *administrators* is no evidence against the *heir,* in a subsequent proceeding affecting the *real estate.* A judgment is evidence (as to persons) only against the parties to the record, or against privies in blood, privies in estate, and privies in law. There is no such privity as between the executor and heir. Under the statute of distributions a legal privity may exist as regards personalty, but it evidently can not as to the realty. The administrator in no degree represents the realty,—can in no wise charge or encumber it by his personal

Sanford *v.* Granger.

act.  (1 *Phil. Ev.* 324, 4*th Am. from* 7*th Lond. ed.*)  III. The *principle* is sustained by *authority.*  (*Cowen & Hill's Notes,* part 2, 921.  4 *Paige,* 542, 546.  3 *Cowen,* 612, 622.  6 *John. Ch.* 360, 372.)  These authorities are fortified by express statute.  (2 *R. S.* 544, § 12, 3*d ed.*)  IV. Such unquestionably was the law until the act of 1843, ch. 172, was passed.  It is contended by the appellant that this act changes the rule of evidence.  V. This act, and the statute above cited, are to be construed together as parts of one body of laws.  They must be so construed, if possible, that each may be maintained; and that the object of the law, as apparent from all its provisions *in pari materia,* may be secured, and so as to avoid a repeal by implication.  (*Smith's Com.* 751, 879.)  VI. These statutes are not necessarily repugnant; both may be upheld.  The proceedings for the sale of a decedent's real estate are of a multiform character.  They relate to *two* different funds, and effect *three* distinct classes of persons.  Under them it is to be first ascertained that debts exist, and that the personal fund is exhausted.  This inquiry involves more intimately the previous action of the administrator, and his relation to creditors.  The real estate is then to be charged—heirs and devisees become interested—new rights intervene, with which administrators are in no sense connected.  Different rules of evidence must, of necessity, be applied, as these diverse persons and rights become affected.  A judgment against the administrator is conclusive as against him, but as against the heir, a stranger, is wholly inoperative.  This would be so independent of both these statutes : they are not declaratory.  This act of 1843 may well be referred to that part of the proceedings, before heirs and devisees are brought in, had between the creditor and administrator, leaving the other applicable to future contests between the heir and creditor.  The case of *Baker* v. *Kingsland,* (10 *Paige,* 366,) does not conflict with this construction.  VII. The construction of the act of 1843, contended for by the appellant, is not only subversive of established rules of evidence, but is grossly oppressive.  It deprives the citizen of his rights and property without due process of law.  He has "no day in court"—no opportunity

to defend. It exposes him, without opportunity to resist, to collusive frauds between the creditor and administrator. It establishes against him, without hearing, a judgment which he can only avoid by proving a negative. It charges him with *costs* (in this case, $460,) incurred by the misconduct or error of the administrator. These consequences were never intended by the legislature, and if intended, can not be constitutionally inflicted. VIII. The appeal should be dismissed for want of parties. The administrators are not made parties, nor the widow. It does not appear that all the heirs are parties. The recital in the first order seems to assume that all the heirs did not appear. (9 *Paige,* 66.)

*S. Stevens,* in reply. I. The judgment was no evidence of assets, in the hands of the administrators, unadministered. The surrogate was not bound, nor was he authorized to order the issuing of an execution, upon due proof of the judgment; nor does that question arise in the case now before the court. (1.) Since 1830, the recovery of a judgment by a creditor of the decedent, against his executors or administrators, upon a trial, or by default, whatever may be the pleadings in the cause, is no evidence whatever of assets ; nor is it an admission of assets, binding upon them. As the law now is, the only object of a judgment against executors or administrators, is to ascertain and determine the amount of the demand due from the estate of the decedent to the plaintiff. Formerly, if *plena administravit* was not pleaded, it was an admission of assets, and conclusive upon the executor or administrator, whether they had assets or not ; that plea is now wholly inappropriate. (2 *R. S. 1st ed.* 87, §§ 27, 28. *Id.* 88, § 32. *Id.* 116, §§ 19, 20, 21. *Allen* v. *Bishop,* 25 *Wend.* 414. *Butler* v. *Hempstead,* 18 *Id.* 666. *Parker* v. *Gainor,* 17 *Id.* 559. *Dox* v. *Backenstose,* 12 *Id.* 542. 2 *R. S.* 448, § 10.) Exempting executors or administrators from liability, *de bonis propriis,* for false pleading, necessarily exempts them from the necessity of admitting or denying assets. Whether they have assets or not, is to be tried before the surrogate only. (See authorities above referred to.) The case of *Platt*

v. *Robins et al.* (1 *John. Ch.* 276,) has no application to this case, under the present state of the law. (2.) It necessarily follows, that the surrogate is not only not bound to order an execution to issue on due proof of the judgment, whatever may be its form, or however obtained, but that he has no authority to do so when the assets are not sufficient to pay all the creditors of the decedent, until an account has been taken; and he can then only order execution for the pro rata share of the assets, applicable to the payment of such judgment. (4 *Denio,* 40. 4 *Wend.* 436. 12 *Id.* 533, 537. 4 *Blackford,* 187. *Jackson* v. *Robinson,* 4 *Wend.* 437 *to* 442.) (3.) But no such question is presented in this case. No question of this description was raised before the surrogate. The respondents opposed the granting of the order to sell the real estate of the decedent, and the surrogate refused to grant such order, *solely and only* on the ground that the judgment was not prima facie evidence of a debt against the estate of the decedent. II. The petition to the surrogate is in the usual form, and shows, sufficiently, a prior accounting by the administrators; but if it did not, no objection can now be raised on that ground. (1.) It was not necessary to state in the petition the particular proceedings upon the prior accounting. It is sufficient to state, generally, that the administrators had accounted, and that there was a deficiency of assets. (2 *R. S.* 3*d ed.* 170, § 52.) It is to be presumed such accounting was in conformity with the statute. (2.) But no such question is presented by the case under consideration. If the administrators had not accounted, as required by law, and if there was not a deficiency of assets, that should have been alledged by the respondents before the surrogate. The appellant could then have shown that such accounting had taken place, and that there was a deficiency of assets; or if such were not the fact, he could have dismissed this proceeding before the surrogate, and instituted proceedings to compel such accounting. III. It was sufficient that the only administrator who acted in the administration and settlement of the estate, accounted. But that question does not arise in this case. (1.) The inventory made by the administrators is the basis of the accounting. If only one of several ad-

ministrators has acted, and he satisfactorily accounts for the
whole inventory before the surrrogate, that must certainly be
sufficient.    When all the administrators act, each represents the
whole estate.    All settlements and lawful contracts, made by
either in regard to the estate, are as binding upon the estate as
though made by all.    A fortiori, where only one acts, he repre-
sents the whole estate, and must account for the whole estate.
(2.) This objection can not be raised in the case now before the
court.    It was not only not raised before the surrogate, but it is
conceded by the proceedings there, that the accounting which
had previously taken place, was regular.    Had this objection
been raised before the surrogate, the appellant might have ob-
viated it by proof.    Or if the objection was insurmountable upon
any state of facts, he might have dismissed this proceeding, and
taken the necessary steps to compel an accounting by all the ad-
ministrators.    IV. The real estate is as much liable to pay the
costs embraced in this judgment as the damages.  (1.) The judg-
ment is *an entirety*, and is prima facie evidence of a debt against
the decedent, to the whole amount.    The facts before the court
do not authorize it to say that these costs were adjudged against
the administrators for their misconduct.    In cases against ad-
ministrators or executors, where the plaintiff recovers costs, the
costs are to be collected out of the estate of the deceased, unless
the court shall specially direct the costs to be paid by the ex-
ecutors and administrators personally.    (2 *R. S: 1st ed. p.* 90,
§ 41.  *Id. p.* 618, 619, § 37.  9 *Wend.* 448.)    Can this court le-
gally assume that the court which rendered the judgment in this
case, ordered the costs to be paid by the administrators person-
ally ? Unless the court did so order, the costs must be paid out
of the estate of the decedent.    (2.) But how can this court as-
sume jurisdiction of this question in this case ? The surrogate
has the exclusive jurisdiction in the first instance, to determine
how much shall be paid to the appellant out of the equitable as-
sets arising from the sale of the real estate.    If he decides
these costs shall be paid out of these equitable assets, and the
respondents think such decision erroneous, they can appeal ; if
he decides the costs shall not be so paid, the present appellant

will appeal. But it is most manifest such decision, whichever way it may be, must be made upon facts not before the surrogate on this application, and which consequently can not now be before this court.

*By the Court,* CADY, J.   The appellant offered no evidence to the surrogate, other than the exemplified copy of the record of his judgment, and if that did not make it the duty of the surrogate to make an order requiring the administratrix and administrators to sell real estate sufficient to pay the *whole* amount of the judgment, then the decree of the surrogate ought not to be affirmed. The appellant in this case did not alledge in his petition that there were not sufficient assets in the hands of the administratrix and administrators to pay *his judgment,* nor did he offer any evidence to prove that fact; but without proof of a deficiency of assets, the judgment is no evidence of a debt against the heirs at law. The language of the 72d section of chapter 46 of the laws of 1837 is: "and where a judgment has been obtained against an executor or administrator for any debt due from the deceased, and there *are not sufficient assets* in the hands of the executor to satisfy the *same,* the debt for which judgment was obtained shall, notwithstanding the form of the judgment, remain a debt against the estate of the deceased to the *same extent* as before, and to be established in the same manner as if no such judgment had been recovered." By chapter 172 of the laws of 1843, a proviso was added to section 72 as follows: Provided that when such judgment or decree has been obtained upon a trial or hearing upon the merits, the same shall be prima facie evidence of such debt, before the surrogate. The only effect of this proviso is, that the creditor need not show any thing in the first instance but the record of his judgment, to *prove his debt and the amount of it ;* but that does not prove that the heir or devisee is liable to pay the debt. To prove that liability the creditor must prove the fact that there are not sufficient assets in the hands of such executor or administrator to satisfy the same. This required no more of the judgment creditor than was required of him by 1 R. L. of 1813, section 3, by which it was en-

acted that no judgment against any executor or administrator for any debt of his testator or intestate shall be deemed a bar to any subsequent action against the heirs of such testator or intestate for the same matter upon which such judgment was obtained, provided always, that such plaintiff shall show a want of personal assets to satisfy *such judgment,* or an execution thereupon duly issued or returned unsatisfied. The same rule as re-enacted in 2 *R. S.* 452, section 32, makes the heir liable for the debts of his ancestor "arising by simple contract or by speciality, to the extent of the estate descended to him." But section 33 such heir shall not be liable for any such debt unless it shall apppear that the personal assets of the deceased were not sufficient to pay and discharge *the same.* And by by section 36 it is made incumbent on the creditor seeking to charge any heirs to show the facts therein required to render them liable. At common law the creditor had his election, to sue the executor or heir on a contract by which the ancestor in terms bound his heir; and if he elected to sue the executor and obtained a judgment, the contract was extinguished and the creditor could not afterwards sue the heir; but by the statute referred to, a judgment against an executor does not bar an action against the heir, but to prevent the judgment from being a bar, the creditor must show a want of assets in the hands of the executor to pay the judgment; and the same rule is incorporated into section 72, by the words already cited. If the creditor shows a judgment, and shows "there are not sufficient assets in the hands of the executor to satisfy the same," then he is entitled to an order directing the executor to sell the real estate left by the deceased. But in this case, as has already been stated, the appellant did not alledge or prove that there were not sufficient assets in the hands of the administratrix and administrators to pay the judgment, and without that proof I am of opinion that the decree of the surrogate, "that the said judgment is not prima facie evidence of a debt against the heirs at law *so as* to authorize a sale of said real estate, and that there was no proof before the surrogate establishing the debt of the appellant as against the said heirs at law," was not erroneous.

Sanford *v.* Granger.

There is another ground upon which the decree of the surrogate may in part at least be supported. The appellant claimed to have real estate enough sold to pay the amount of the judgment, including $460,01 of costs. The respondents denied his right to sell real estate to pay any part of the judgment. Neither party made any distinction between that part of the judgment which was for a debt due from the intestate and that part of it which was for costs awarded against the administratrix and the administrators for their default in the defense of the action. *Wood* v. *Byington*, (2 *Barb. Ch. Rep.* 387,) is an authority for saying, that the costs awarded against executors can in no event be a charge on real estate in the hands of an heir. The chancellor in that case said: "The act of April, 1843, does not charge the real estate with the costs of the suit in which the judgment or decree against the personal representatives is obtained, but merely makes the judgment or decree presumptive evidence of the *existence and amount of the debt due from the testator*." In that case neither party made any distinction between that part of the decree which was for the debt due from the intestate, and that which was for costs, and yet the chancellor reversed so much of the decree as related to the costs, and affirmed the other part. That case is, therefore, an authority for saying, that the appellate court may and ought to take an objection apparent on the record, and which goes to the merits of the cause, although not taken in the court below; and it must be remembered, that in this case some of the respondents are infants, and they are not to be concluded although it be found that the guardian has not before the surrogate made all the objections he might have made. "It is the duty of the court to see that the rights of an infant are not prejudiced or abandoned by the answer of his guardian." (1 *Barb. Ch. Prac.* 148. *Barrett* v. *Alvine*, 7 *Gill & John.* 191.)

The effect of an unqualified reversal of the surrogate's decree would be to compel him to proceed upon the case as it was before him, and make an order for the sale of the real estate of the intestate for the payment of the full amount of the judgment, including the costs. Enough has been said to show that such an order would

not be warranted by the facts in, and the law applicable to, the case. There is another objection, not raised before the surrogate, but which in my judgment goes far to show that the appellant did not make out a case by his petition or his proof entitling him to a decree ordering a sale of the real estate of the intestate to satisfy any portion of his judgment. No accounting by the administratrix and administrators was alledged in the petition, nor proved before the surrogate. All that is stated upon that subject in the petition is, "that on the 19th day of January, 1849, Giles J. Slocum who was the sole acting administrator of said estate rendered to the said surrogate an account from which it appeared there were not sufficient assets to pay the debts of the deceased." Admitting that allegation in the petition to be literally true, it was not enough to entitle the appellant to an order for the sale of the real estate of the intestate. The debts of the intestate may have amounted to tens of thousands of dollars, and the 72d section already cited shows that a judgment creditor who applies for an order to sell the real estate of the deceased debtor, to satisfy a judgment against his executor, must show that there are not sufficient assets in the hands of the executor to satisfy his judgment. There may, in this case, be assets enough in the hands of the administratrix and administrators to pay the judgment ten times over, yet not be enough to pay all the *debts* of the intestate. Again, the rendering an account by one of the administrators is not enough; they are all bound to account, and it is the duty of the creditor to make them all account, before he has any right to call upon the heirs at law to pay a judgment against executors or administrators. To allow the account of one of the administrators to be sufficient would open a door to fraud. One may not know what assets the others have had, or what has been done with the assets in the hands of the others.

By 1 *R. L. of* 1813, 450, § 23, it was enacted that when any executor or administrator whose testator or intestate shall have died seised of any real estate, shall discover or suspect that the personal estate of such testator or intestate is insufficient to pay his or her debts, such executor or administrator shall &c. The words any *executor or administrator* being in the singular num-

Sanford *v.* Granger.

ber in this section were in *Jackson* v. *Robinson*, (4 *Wend.* 436,) held sufficient to authorize one of several administrators to apply to a surrogate for an order to sell the real estate of the intestate. In that case, the administrator described himself as *surviving* administrator: that gave the surrogate jurisdiction. There had been a sale, and it was sought to impeach the proceedings before the surrogate collaterally, and the court held that that could not be done if the surrogate had jurisdiction.

The language of 2 *R. S.* 100, § 1, is: " After the executors or administrators of any deceased person shall have made and filed an inventory according to law, if they discover the personal estate of their testator or intestate to be insufficient to pay his debts, *they* may," &c. This shows they are all to act, and in *Fitch* v. *Witbeck*, (2 *Barb. Ch. Rep.* 161,) it was held by the chancellor that all the administrators ought to join in the application. In this case, however, the administratrix and administrators make no application to the surrogate; nor do they object to any thing the petitioner asks. They doubtless wish to have the real estate sold, as well to pay the costs as the debt, as that will relieve them from all responsibility on account of the costs. 2 *R. S.* 82, § 2, makes it necessary for the executors or administrators to make a true and perfect inventory of all the goods, chattels and credits of their testator or intestate. They must all make it. 2 *R. S.* 100, § 2, requires that the petition of the executors or administrators to the surrogate for an order to sell real estate, shall set forth: 1. The amount of the personal estate which has come to the executor or administrator. 2. The application thereof. 3. The debts outstanding against the testator or intestate, as far as can be ascertained. 4. A description of all the real estate of which the testator or intestate died seised, with the value of the respective portions or lots, and whether occupied or not, and if occupied, the names of the occupants. 5. The names and ages of the devisees, if any, and of the heirs of the deceased. A petition setting forth these matters was necessary to give jurisdiction to the surrogate. By 2 *R. S.* 102, § 14, it is declared that the surrogate shall make no order for mortgaging, leasing or sale of the real property of the deceased, until upon due examina-

tion, he shall be satisfied: 1. That the executors or administrators making such application have fully complied with the preceding provisions of that title, to wit, title 4, ch. 6, part 2. 2. That the debts, for the purpose of satisfying which the application is made, are justly due and owing, &c. 3. That the personal estate of the deceased is insufficient for the payment of the debts, and that the whole of such estate which could have been applied to the payment of the debts of the deceased, has been duly applied for that purpose.

Section 72, in chapter 460 of the laws of 1837, as amended by ch. 172 of the laws of 1843, was intended as a substitute for 2 *R. S.* 108, § 48, and does not authorize a surrogate, upon the application of a creditor, to order an executor or administrator to sell the real estate of the testator or intestate. Section 50 gives that power if the surrogate be satisfied of the matters specified in § 14, in that title. Those matters have just been stated; but they are not alledged in the appellant's petition, nor were they proved to the surrogate. There is nothing in the case proving that the administratrix and administrators had rendered an account, and had accounted as provided in ch. 6, part 2, title 4 of the R. S., or that the whole of the personal estate had been applied to the payment of the debts of the intestate. I am, therefore, of opinion that the decree of the surrogate should be affirmed. But as it is to be affirmed upon grounds not distinctly taken before the surrogate by the respondents, it is affirmed without costs, and without prejudice to any application hereafter to be made by the appellant to the surrogate, for a sale of the real estate of the intestate.

[SARATOGA GENERAL TERM, January 5, 1852. *Willard, Hand* and *Cady,* Justices.]