# THE PREROGATIVE COURT

OF

## THE STATE OF NEW JERSEY,

### MAY TERM, 1885.

---

THEODORE RUNYON, ESQ., ORDINARY.

---

WILLIAM H. PERSONETTE, appellant,

*v.*

JOHN L. JOHNSON and LOUIS HOOD, respondents.

1. This court may, in its discretion, allow new testimony to be taken and used on the hearing of an appeal, and where it appears that the order appealed from was a surprise to the appellant, that is sufficient ground for permitting him to take testimony.

2. Where there are two or more executors, both or all should, as a general rule, join in a petition to the court for an order to sell their testator's lands to pay his debts, or, if both or all do not join, the record should show why the executor or executors who do not apply do not join in the application.

3. A testator's lands may be sold to pay the costs and expenses of settling his estate, including executors' commissions and counsel fees, where the personal estate is insufficient to pay them.

Appeal from two decrees of Essex orphans court.

*Mr. C. F. Hill,* for appellant.

*Mr. L. Hood,* for respondents.

THE ORDINARY.

One of the appeals in this case is from an order made by the orphans court of Essex county, April 29th, 1884, directing that the land of Aletta Personette, deceased, in the township of Caldwell, in that county, be sold to pay her debts, and the other is from an order made on that day by the same court, that the respondent John L. Johnson, one of the executors of Aletta Personette, be allowed $50 for his services as such executor, and that the respondent Louis Hood be allowed $100 for his services as counsel. Those sums were part of the amount of the debts for which it was ordered that the land be sold. Both orders were appealed from by one appeal, and both were included in the same petition of appeal and the answer thereto, and no objection was made to the joinder. No evidence was sent up with the transcript except an affidavit of publication of the order to show cause granted on the petition for the order to sell, and it does not appear that any testimony was taken in the orphans court. Pursuant to an order of this court, testimony has been taken in reference to the subject-matter of the orders. It is not

NOTE.—The case of *Fitch* v. *Wilbeck, 2 Barb Ch. 161,* cited by the chancellor, was approved in *Sandford* v. *Granger, 12 Barb. 405.*

Under the statutes of California, an application to sell lands to pay a testator's debts must be made by all the executors who have qualified, or the sale is void. *Gregory* v. *McPherson, 13 Cal. 562,* per *Terry, C. J.;* see, as to this case, *Stuart* v. *Allen, 16 Cal. 501.*

In *Mehns* v. *Pfister, 59 Wis. 186,* it was held that the heirs could not object to a sale of their ancestor's lands to pay his debts, on the ground that one of the three executors did not swear to the inventory, or to the assets and debts, nor sign the petition to sell lands, such third executor being testator's widow, who had refused to take under the will, but who joined in the report of sale, and in the deed thereon.

In *Sinclair* v. *McBryde, 88 N. C. 438,* one creditor was held capable of filing a petition to compel an executrix to sell her testator's lands, in order to pay his (the creditor's) debt, without joining all the decedent's other creditors as petitioners.

Personette v. Johnson.

newly-discovered testimony, and the respondents objected to the use of it on the hearing on the ground that, according to the practice of ecclesiastical courts in cases of this kind, no evidence can be used on the hearing of an appeal except that which was used below, unless it be newly-discovered evidence. But the practice is not restricted to so narrow a limit. *Read* v. *Drake, 1 Gr. Ch. 78; Sayre* v. *Sayre, 1 C. E. Gr. 505; Rusling* v. *Rusling, 9 Stew. Eq. 603.* It is within the discretion of this court to allow the taking of new testimony to be used on the appeal, or to deny the privilege, as it shall deem most conducive to justice, under the circumstances. *Price* v. *Clark, 3 Hagg. 265 n.; The Euphrates, 8 Cranch 385; The St. Lawrence, Id. 434; The Pizarro, 2 Wheat. 227; Scribner* v. *Williams, 1 Paige 550; Case* v. *Towle, 8 Paige 479.* In the case in hand, the order to take the testimony was based upon an affidavit of the appellant, showing that the orders appealed from were a surprise upon him, and under such circumstances it is eminently proper to allow the taking of new testimony.

But if the record alone be considered, without the evidence taken in this court, the order for sale must be reversed. It appears by the record that the application was made by one alone of two executors, but why it was made by one alone without the other, does not appear. Where there are several executors or administrators, it is, as a general rule, proper, if not necessary, that they all join in the application to sell land under the statute

The supreme court of Massachusetts has no jurisdiction in equity *to compel* a co-executor to join in a petition to the probate court for leave to sell real estate, *Southwick* v. *Morrell, 121 Mass. 520.*

Where all the administrators have joined in the petition, the subsequent refusal of one to proceed will not invalidate the sale by the others, *Osmun* v. *Traphagen, 23 Mich. 80;* or his removal from office, *Steele* v. *Steele, 89 Ill. 51;* as to the effect of a sale by an administratrix after her letters had abated by her marriage, see *Rumph* v. *Truelove, 66 Ga. 480;* or by an executrix, *Chapman* v. *Hollister, 42 Cal. 462; Littleton* v. *Addington, 59 Mo. 275; Clark* v. *Campbell, 2 Rawle 215;* or by the administrator's death, *Baker* v. *Bradsby, 23 Ill. 632;* or renunciation, *Robinson* v. *Redman, 2 Duv. 82;* or removal from the state, *Gridley* v. *Phillips, 5 Kan. 349.*

In a note to *Martin* v. *Cullen, 3 Stew. Eq. 426,* are cases showing for what debts a decedent's land may be sold.—REP.

to pay debts. It has been held so in other states under statutes similar to ours. *Fitch* v. *Witbeck, 2 Barb. Ch. 161* ; *Hannum* v. *Day, 105 Mass. 33. Wortman* v. *Skinner, 1 Beas. 358,* is not authority to the contrary. It was there said that the orphans court may order one of several administrators to sell land to pay debts ; but both administrators in that case joined in the petition for the order, and the order directed both of them to sell. The matter now under consideration was not decided in that case. If the application is not made by the whole number of executors or administrators, where there are several, it should appear on the record why those who do not apply, do not join in the application.

According to the proof sent up with the record, the order to show cause was published for only five weeks instead of six, as required by the statute. It is alleged, however, by the respondents, that it was in fact published for six weeks. Leave would be given to produce proof that the order was published for the full time required by law if there were not other insuperable objections to the order to sell. It appears, by the testimony taken in this court, that the appellant was not only one of the executors, but was the devisee under the will of the land described in the petition for the order to sell. His co-executor was desirous of having the debts paid. The personal estate was appraised at only $80.40, and proved to be worth only $68.85. There were undisputed debts due from the estate to the amount of $316.76, and a claim of $67.77 in favor of Mr. F. H. Pilch, which was disputed by the appellant. In order to coerce the appellant to pay off the debts, Mr. Johnson, his co-executor, made application for the order to sell. On the 12th of February, 1882, the day on which the petition for the order for sale was filed, he wrote to the appellant on the subject, and in his letter gave him two weeks' time in which to pay the claims against the estate. The time for appearance fixed in the order to show cause was April 15th, 1884. On the 21st of February, nine days after the order to show cause was made, the attorneys of the appellant wrote to Mr. Johnson that the appellant had paid all the demands against the estate except those which he (Johnson) had

paid, and the bill of Mr. Pilch, which the appellant was advised by them the estate was not liable to pay, and that they had informed Mr. Pilch that the appellant declined to pay his bill, and added that the latter had replied that he would sue for it. One of them, Mr. C. F. Hill, had written to Mr. Pilch on the subject of his claim, and Mr. Pilch, by his answer to that letter, after stating that his bill was then questioned for the first time, declined to enter into any discussion with regard to it, and added that unless it were paid during the then current week, he would bring a suit for it. On the same day, Mr. Pilch communicated this anewer to Mr. Johnson. A short time before the order for sale was made, Mr. Johnson called on the appellant and offered to abandon the application, provided the latter would pay Mr. Hood his counsel fee for services to the estate. The appellant did not pay the counsel fee, and the order for sale was taken. When that order was taken, Mr. Johnson understood that all the debts of the testatrix had been paid, with the exception of the claim of Mr. Pilch, and he knew that that claim was disputed. The order for sale states that the deficiency is $223.48. This amount was made up of Mr. Pilch's claim, and the commissions and counsel fee. No suit was brought on Mr. Pilch's claim. The ground for the order to sell was then a disputed claim, one known to the applicant for the order to be disputed by his co-executor, who was the devisee whose land the order was to affect, and the applicant's commissions and the counsel fee.

The appellant's counsel insists that the order to sell could not lawfully be based upon those claims or any of them. He argues that, inasmuch as the statute providing for the sale of the land of a decedent to pay his debts, is in derogation of the common law, it must be construed strictly, and inasmuch, also, as the statute, by its terms, authorizes the sale of land to pay debts, merely, the land of the decedent cannot be sold, under the statute, to pay commissions or counsel fees for or in the settlement of the estate. He also insists that the orphans court had no authority to order the sale of land to pay a disputed claim.

The statute makes a decedent's land liable for his debts, and provides for the sale thereof, to pay so much of the debts as his

12

personal property will not pay. In order to ascertain what is meant by the term " debts," in the statute—which term, taken literally, would embrace nothing but obligations and liabilities—we must look at all parts of the act. Some of the provisions of the act throw great light upon this matter, and show that the intention of the legislature was to embrace in the term the necessary expenses of settling the estate. By the seventy-third section, it is provided that when any rule to show cause why lands and real estate should not be sold for the payment of debts, shall be obtained, the heirs or devisees of the intestate or testator, or any of them, may appear before the court at the time fixed for hearing, and enter into bond to the executor or administrator in such sum and with such sureties as the court shall approve, conditioned for the payment to the executor or administrator of so much money as may be required to pay the residue of the debts of the testator or intestate, and *the just expenses and allowances for the settlement of the estate* which shall remain after the personal estate shall be applied thereto, and to indemnify and save harmless the executor or administrator from any damages or costs which he may individually be lawfully subjected to by reason of the delay, and that, thereupon, the hearing of the rule and all proceedings thereunder shall stand adjourned until the amount of such deficiency shall be ascertained; and if the heir or devisee, on demand made of him or his sureties on the bond, shall refuse or neglect to pay to the executor or administrator the moneys required to pay the residue of the debts, *expenses and allowances,* the orphans court shall order the bond to be prosecuted, or proceed to make such order for the sale of the lands and real estate whereof the testator or intestate died seized, as might have been made if the bond had not been given. The next section provides for the application, by the orphans court, of the money collected by suit upon the bond, or so much thereof as may be necessary for the purpose, to the payment of the residue of the debts, expenses and allowances before mentioned, which shall remain unpaid after applying to the payment thereof the personal estate and the costs and damages of the executor or administrator individually, mentioned in the condition of the

bond; so that the heir or devisee, in order to save his land from sale for the payment of the decedent's "debts," is required to pay not merely the residue of the debts of the decedent which shall remain after applying the personal estate thereto, but the residue of the debts and expenses of settling the estate which shall remain after such application of the personal estate thereto. This shows that, in the mind of the legislature, the extent of the liability of the land was not to be limited to the debts, but embraced, also, the expenses of settling the estate.

But, further, by the seventy-eighth section it is provided that after sale of the land under an order of sale to pay debts, the court is to order a distribution of the surplus "after debts and just expenses of every sort first allowed and deducted," among the heirs or devisees to whom the lands descended or were devised. It is suggested that the expenses mentioned in this section are expenses of sale; but the expression is of far more extensive signification. It is not expenses of sale, merely, but expenses of every sort. Since the act provides that the expenses of the administration may be taken out of the proceeds of the sale, it follows that the land may be sold to raise those expenses; that is, that that may be done directly which may be thus done indirectly. The expenses of administration are incident to the payment of the debts. The statutory provision for the sale of land to pay debts should be construed to include by implication authority to sell to pay the expenses of administration. The petition states that the land, which was a tract of twenty-one acres, was worth $1,000. It was unimproved, and about one-half meadow and the rest woodland. There appears no reason why the court should have ordered that the whole of it should be sold to raise the alleged deficiency. Part of it would have produced money enough.

As to the order granting commissions to Mr. Johnson, and a counsel fee to Mr. Hood, the amount awarded to the former, $50, exceeds the limit fixed by the statute, which provides that the commissions of executors on $1,000 or less shall not exceed seven per cent. The award was of $50 to Mr. Johnson, while the whole amount which had come to the hands of the executors

up to the time of the making of the order, was $68.85, the
amount realized upon the property inventoried, the lawful com-
missions on which sum would be $4.81. And if, in computing
the commissions, allowance was made to Mr. Johnson upon the
amount realized upon the inventory, and the amount of the debts
which would remain unpaid after applying the money realized
from the personal property thereto, including therein the com-
missions and counsel fees, the commissions would have been
only $37.20, and this allowance, if made, should have been
made to both executors.

The order for a counsel fee of $100 does not appear to have
been based upon any evidence. By the evidence taken in this
court, it appears that the only services which were rendered by
Mr. Hood, for which he could lawfully be compensated out of
the estate, were those rendered in obtaining the order for sale.
The rest of his services were rendered to the executors in doing
their work, the work for doing which their commissions are
given to them. For such services, counsel fees payable out of
the estate will not be allowed. *Wolfe's Case, 7 Stew. Eq. 223.*
The order granting the allowances was a separate order, not
made upon a final or other accounting, and it was made without
notice. The account of debts in the petition for the order for
the sale of land contained no reference to allowances or the lia-
bility of the estate therefor. The order to show cause was not a
notification of an intention on the part of the petitioning execu-
tor for an order fixing his commissions for his services in settling
the estate, nor of an application on his part for the allowance of
counsel fees to the counsel of the executors. The appellant had
a right to be heard upon the making of those allowances. Not
only was he the devisee of the land which Mr. Johnson pro-
posed to sell under the order to raise the money to pay the
allowances, but he was one of the executors, and had participated
in settling the estate, and therefore was entitled to a share of the
compensation for that service. The order under consideration
not only made an excessive allowance for commissions, but
awarded it, not to both executors, but to Mr. Johnson alone.
The order for commissions and counsel fee was not only irregu-

Allen's Case.

larly made, but it was premature also as to the commissions. The services for which the compensation was given had not all been rendered. It will be reversed. The order for sale will also be reversed. Had the orphans court been aware that the claim of Mr. Pilch was disputed, it would not have made the order to sell the land to raise that money. Mr. Pilch is not debarred from bringing suit for his claim, by the fact that he did not bring an action to establish it within three months from the time of the receipt of the before-mentioned letter from Mr. Hill to him. That letter was not such a notice as is contemplated by the sixty-third section of the orphans court act. It was merely an expression of opinion on the part of the writer against the validity of the claim, and a statement that he had advised the appellant that the estate was not liable for it. No costs of the appeal will be awarded to either party.